## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**ANGELA COOK**,

     *Plaintiff*,

v.

                               Civil Action No.: _____

**UNITED LAUNCH ALLIANCE**,

     *Defendant*.

## COMPLAINT

COMES NOW Plaintiff, Angela Cook (hereinafter "Plaintiff" or "Cook") and files her complaint against Defendant, United Launch Alliance (hereinafter "Defendant" or "ULA") and in support she states the following:

## NATURE OF THE ACTION

1.    This is an action for monetary damages pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§2000e, *et seq.* ("Title VII"), Title II of the Genetic Information Non-Discrimination Act of 2008 ("GINA"), 42 U.S.C. § 2000ff *et seq.*, the Americans with Disabilities Act 42 U.S.C. §§12101, *et seq.* ("ADA"), and the Florida Civil Rights Act, Fla. Stat. §§760.01 *et seq.* ("FCRA") to redress Defendant's discrimination against Plaintiff due to her religion, genetic information, disability or alternatively, her perceived disability. As a result, ULA placed Plaintiff on unpaid leave and ultimately, terminated her employment.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII, GINA, the ADA, and the FCRA.

3.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## THE PARTIES

4.     Plaintiff Angela Cook, is a citizen of the United States and at all times material was a citizen of the State of Florida, residing in Brevard County, Florida.

5.     Defendant, United Launch Alliance, is a is a joint venture of Lockheed Martin Corporation and The Boeing Company and employees approximately 2,700 employees nationwide, including 470 employees at its principal place of business located in Cape Canaveral, Florida.

6.     Defendant conducts business in this District and Plaintiff worked for Defendant in this District. Defendant is an employer as intended by Title VII, GINA, the ADA, and the FCRA and employed more than fifty (50) employees at all times relevant.

//

//

2

## PROCEDURAL REQUIREMENTS

7.    Plaintiff has complied with all statutory prerequisites to filing this action.

8.    On or about October 19, 2021, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on the basis that ULA discriminated against her on the basis of religion, disability, genetic information, and in retaliation, thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e).

9.    Plaintiff's EEOC charge was filed within three hundred (300) days after the unlawful employment practices occurred.

10.    On August 29, 2022, the EEOC issued Plaintiff a Notice of Right to Sue[1] after more than 180 days had passed since the filing of her Charge.

11.    Plaintiff files this Complaint on November 28, 2022, which is within ninety (90) days of receiving the EEOC's Dismissal and Notice of Rights.

## FACTUAL ALLEGATIONS

12.    For twenty-four (24) years, Plaintiff dutifully performed her duties at ULA's Cape Canaveral location as a Field Test Technician/Quality Inspector for launch pad operations without issue and at or in excess of reasonable expectations.

---

[1] *See* Exhibit 1.

3

13.     At the time Plaintiff was hired, there was no obligation that she be vaccinated against COVID-19. However, on or about September 1, 2021, ULA issued its COVID-19 Vaccination Policy (the "Policy"), requiring that all ULA employees, including Plaintiff, be vaccinated against COVID-19.

14.     The Policy required that Plaintiff receive the first shot of a two-dose vaccine[2], or the only shot of a single-dose vaccine, on or before October 29, 2021.

15.     ULA's Policy also provided a procedure by which employees could request an accommodation for a qualifying medical condition or a religious objection to the COVID-19 vaccines.

16.     For reasons unknown, ULA revised its entire existing accommodation policy to include a specific form which Plaintiff was required to use in requesting an accommodation.   ULA   also   requested   that   its   employees   submit   their accommodation requests on or before October 1, 2021.

17.     On or about September 23, 2021, and pursuant to ULA's Policy, Plaintiff submitted a request for a medical accommodation in light of the significant dangers the COVID-19 vaccination posed to her health in conjunction with her underlying disability.

---

[2] For employees who elected to take the two-dose vaccine, the second shot was to be administered on or before November 30, 2021.

18.    Specifically, Plaintiff suffers from a left atrial enlargement, non-sustained V-TACH, and MVP – all of which are physical impairments that create a significant risk that myocarditis, pericarditis, and VTE if Plaintiff were to receive the vaccine.

19.    The aforesaid conditions make Plaintiff a qualified individual as intended by the ADA and Title VII, in that Plaintiff can perform the essential functions of her employment with or without reasonable accommodations.

20.    Plaintiff is also a disabled person as intended by the ADA and Title VII, in that the aforesaid physical impairments substantially limit one or more of Plaintiff's major life activities, including without limitation, performing manual tasks, and sleeping without issue (i.e., heart palpitations).

21.    Despite the aforesaid disability and significant risk that the vaccines posed, ULA denied Plaintiff's medical accommodation request on or about October 21, 2021. ULA thereafter placed Plaintiff on unpaid administrative leave because of her disability.

22.    After being placed on leave, Plaintiff contacted her union and requested that it file a grievance on her behalf. Plaintiff also discussed her sincerely held religious beliefs with her union, during which time Plaintiff learned she was permitted to submit a religious accommodation request *and* medical accommodation request, contemporaneously. However, due to being placed on leave, Plaintiff did

not have access to ULA's e-mail system or any documents related to ULA's newly revised policy for submitting religious accommodation requests.

23.     Plaintiff advised her union steward that she did not know the manner in which ULA demanded she submit her religious accommodation request. In response, the union steward advised Plaintiff she could submit to him her religious accommodation request and he would thereafter tender her request to ULA.

24.     Plaintiff thereafter tendered to her union steward a request for religious accommodation on or about October 29, 2021—one day after the union filed its grievance on Plaintiff's behalf concerning ULA's failure to accommodate Plaintiff's disability.

25.     On or about November 15, 2021, ULA met with Plaintiff's union to discuss the grievance it had filed. The discussions were to no avail.

26.     On or about December 15, 2021, ULA issued its decision denying Plaintiff's union's grievance on the grounds that it "was not reasonable" for ULA to allow Plaintiff to wear a mask in social settings and otherwise work in a private office because doing so "would constitute an undue hardship."

27.     Notably, ULA placed Plaintiff on unpaid leave beginning October 29, 2021 despite no lawful basis to do so. Specifically, ULA alleges it placed Plaintiff on unpaid leave because of her failure to abide by ULA policy, but this is not true.

Indeed, Plaintiff need not comply with a policy that unlawfully infringes upon her right to remain free from discrimination on the basis of disability in the workplace.

28. Rather, ULA placed Plaintiff on unpaid leave and ultimately terminated Plaintiff's employment because she is disabled, or alternatively, ULA placed Plaintiff on unpaid leave and ultimately terminated her employment because it perceived Plaintiff to be disabled.

29. Specifically, ULA perceived Plaintiff to be infected with the COVID-19 virus and such perception is the basis for which Plaintiff was placed on unpaid leave and ultimately, terminated.

30. The COVID-19 virus is a serious illness which can have long term health effects on those infected with the virus.

31. Plaintiff's perceived condition substantially limited her major life activities including but not limited to working, as she was required to leave work and ordered to remain out of work due to ULA's perception that Plaintiff had COVID-19.

32. Defendant's actions ordering Plaintiff's to leave work and remain out of work until she was able to provide proof of vaccination against COVID-19 evidence Defendant's perception that Plaintiff was disabled and suffered from a serious impairment.

33.    As a direct and proximate result of ULA's aforesaid discrimination on the basis of Plaintiff's disability or alternatively, her perceived disability, Plaintiff sustained damages.

## COUNT I
### DISABILITY DISCRIMINATION
### Violation of the ADA

34.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

35.    Plaintiff is a disabled person within the meaning of 42 U.S.C. § 12102(1).  Plaintiff suffers from a left atrial enlargement, non-sustained V-TACH, and MVP, all of which are physical impairments that substantially limit one or more of Plaintiff's major life activities, such as performing manual tasks, working, and traveling.  ULA also regard Plaintiff as having such an impairment as defined by 42 U.S.C. §§ 12102(1)(C), 3(A).

36.    Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8).  Plaintiff, with or without a reasonable accommodation, can perform the essential functions of OCF Investigator based factors including but not limited to, his education, experience, performance reviews, and October 2018 return-to-work letter.

37.    Plaintiff, at all times relevant to this action, was an employee within the meaning of 42 U.S.C. § 12111(4).

38.    At all times relevant to this action, ULA was Plaintiff's employer within the meaning of 42 U.S.C. § 12111(5).  ULA engaged in an industry affecting commerce and has approximately 2,700 employees (including 470 employees at its Cape Canaveral facility) for each working day in each of 20 or more calendar weeks in the current and preceding years.

39.    ULA had actual knowledge or constructive knowledge of Plaintiff's disability at all times relevant to this action, in that ULA previously granted Plaintiff FMLA leave due to her disability; ULA discussed Plaintiff's disability; ULA discussed Plaintiff's need for accommodations; examined, reviewed, or possessed medical evidence of Plaintiff's disability; and received Plaintiff's request for a disability accommodation.

40.    ULA discriminated against Plaintiff by placing her on unpaid leave because of her disability, refusing to accommodate Plaintiff because of her disability, and terminating Plaintiff because of her disability.

41.    ULA purposefully, willfully, intentionally, or recklessly retaliated against Plaintiff by engaging in a series of adverse actions, including without limitation, ignoring, denying, or refusing Plaintiff's requests for an accommodation, placing Plaintiff on unpaid administrative leave, and terminating Plaintiff's employment.

42.     The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and/or engaged in protected activity by requesting an accommodation for her disability which prohibited Plaintiff from complying with ULA's mandatory COVID-19 vaccination policy.

43.     All allegations set forth herein constitute disability discrimination in violation of the ADA.

44.     As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT II
### PERCEIVED DISABILITY DISCRIMINATION
### Violation of the ADA

45.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

46.     At all times relevant to this action, Plaintiff was an employee within the meaning of 42 U.S.C. § 12111(4) and ULA was Plaintiff's employer and a covered entity within the meaning of 42 U.S.C. § 12111(5).

47.     Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8), in that Plaintiff can perform the essential functions of a Field Test

Technician/Quality Inspector for launch pad operations with or without a reasonable accommodation as evidenced by her fourteen (14) year history working for ULA for 14 years without issue and in full satisfaction of ULA's reasonable expectations.

48.   At all times relevant to this action, Plaintiff was a disabled person within the meaning of 42 U.S.C. § 12102(2), in that ULA perceived Plaintiff to have COVID-19, which is a serious illness that can have long term health effects lasting more than six (6) months on those infected.

49.   COVID-19 substantially limits one or more major life activities, such as caring for oneself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.

50.   ULA regarded Plaintiff as having such an impairment as defined by 42 U.S.C. §§ 121023(A) and as evidenced by ULA's decision to place Plaintiff on unpaid leave and ULA's ultimate decision to terminate Plaintiff's employment.

51.   ULA placed Plaintiff on unpaid leave and terminated her employment because it perceived Plaintiff was disabled.

52.   Vaccination is immaterial as to whether one is able to contract or transmit COVID-19, and this was known or should have been known based on a wealth of scientific studies and literature readily and publicly available evidencing the same to a reasonable degree of medical certainty.

53.     Alternatively, Plaintiff is disabled, in that Defendant perceived Plaintiff to have COVID-19 and COVID-19 is not a transitory or minor impairment but rather, a serious illness that can have long-term health effects lasting more than six (6) months on those infected with the virus.

54.     COVID-19 substantially limits one or major life activities—including the ability to work—as evidenced by Defendant's decision to place Plaintiff on unpaid leave for more than a month and its refusal to permit Plaintiff to return to work unless she provided proof that she did not have COVID-19 and was vaccinated against COVID-19.

55.     Irrespective of whether COVID-19 substantially limits one or more of Plaintiff's major life activities, ULA nevertheless regarded Plaintiff as having a physical impairment because she was not vaccinated.

56.     ULA placed Plaintiff on unpaid leave and terminated her employment.

57.     ULA placed Plaintiff on unpaid leave and terminated her employment was because ULA perceived Plaintiff to have COVID-19, and COVID-19 impaired Plaintiff's ability to perform her employment duties while physically at work.

58.     No facts exist as to a change in Plaintiff's performance, her ability to perform her duties at or in excess of expectations, or any other just basis to support a finding that Plaintiff was terminated for any non-discriminatory reason.

59.    The ADA prohibits ULA from discriminating against Plaintiff because it perceived Plaintiff to be disabled in regard to discharge, employee compensation, and other terms, conditions, and privileges of Plaintiff's employment.

60.    ULA violated the ADA by unlawfully placing Plaintiff on unpaid leave and terminated her employment because it perceived Plaintiff to be disabled.

61.    ULA took the aforesaid adverse employment action intentionally because it knew Plaintiff was disabled or perceived Plaintiff to be disabled.

62.    ULA purposefully, willfully, intentionally, or recklessly discriminated against Plaintiff by engaging in a series of adverse actions, including without limitation, ignoring, denying, or refusing Plaintiff's requests for an accommodation, placing Plaintiff on unpaid administrative leave, and terminating Plaintiff's employment because ULA perceived Plaintiff to be disabled.

63.    ULA purposefully, willfully, intentionally, or recklessly retaliated against Plaintiff by engaging in a series of adverse actions, including without limitation, ignoring, denying, or refusing Plaintiff's requests for an accommodation, placing Plaintiff on unpaid administrative leave, and terminating Plaintiff's employment because ULA perceived Plaintiff to be disabled.

64.    The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and/or engaged in protected activity by requesting an

accommodation for his disability which prohibited Plaintiff from complying with ULA's mandatory COVID-19 vaccination policy.

65.   All allegations set forth herein constitute disability discrimination in violation of the ADA.

66.   As a direct and proximate result of Defendants' actions or omissions, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, and incurred pecuniary damages in retaining counsel, costs associated with job searches and applications, and as a result of the pecuniary and non-economic damages incurred, Plaintiff is entitled to an award of monetary damages and other relief deemed appropriate by this Court.

67.   Defendant's unlawful conduct in violation of the ADA is outrageous and malicious, intended to injure Plaintiff, and has been done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

## COUNT III
### RELIGIOUS DISCRIMINATION
### Violation of Title VII

68.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

69.     Plaintiff sincerely holds religious beliefs and is a member of a protected class based on her religion.

70.     Plaintiff is an employee within the meaning of Title VII.

71.     Defendant is an employer within the meaning of Title VII.

72.     Title VII forbids an employer from refusing a job to someone because of her need for religious accommodation, absent proof that granting the accommodation would cause it undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015).

73.     This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

74.     A plaintiff can therefore make out a prima facie case under Title VII by showing (1) she held a *bona fide* religious belief, the practice of which conflicted with an employment duty; (2) the employer took adverse action—including the refusal to hire—because of the plaintiff's inability to fulfill the job requirement; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision. *See Abercrombie & Fitch*, 575 U.S. at 775.

75.     More specifically, courts and the EEOC have insisted that federal law can require employers to accommodate sincere religious objections to a loyalty oath—even when that oath might otherwise be required by state law. *See* EEOC Decision No. 85-13, 38 Fair Empl. Prac. Cas. (BNA) 1884 (1985) (concluding that an employer's refusal to accommodate an employee's request to sign an alternate oath for religious reasons violated Title VII).

76.     Here, Plaintiff advised Defendant of her sincerely held religious beliefs that (1) vaccination is not morally obligatory in principle and so must be voluntary; (2) there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions; (3) a person's informed judgments about the proportionality of medical interventions are to be respected unless they contradict authoritative Christian moral teachings; (4) a person is morally required to obey his or her sure conscience; and that (5) abortion is a sin and contrary to the teachings of the Christian Church and as a result, a Christian may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines. Failure to abide by these sincerely held religious beliefs is a dereliction of her primary loyalty to God and, absent an accommodation, Plaintiff could not comply with Defendant's mandatory COVID-19 vaccination without violating her sincerely held religious beliefs.

77.    Plaintiff informed Defendant of this conflict and expressly sought an accommodation.

78.    In response to Plaintiff's request for an accommodation, Defendant took an adverse action against her by placing her on unpaid leave and thereafter, terminating her employment because of her religious need for an accommodation. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions include "fail[ing] or refus[ing] to hire," "discharg[ing]," or otherwise discriminating with respect to the "terms" and "conditions" of employment).

79.    Defendant made no efforts at all to accommodate Plaintiff's sincerely held religious objection to its Policy and then placed her on unpaid leave and terminated her employment because of the aforesaid conflict.

80.    Defendant's failure to produce any alternative therefore requires it to have accepted Plaintiff's proposal absent undue hardship.

81.    Accommodating Plaintiff would not have imposed an undue hardship on Defendant, as evidenced by ULA's utilization of the exact COVID-19 mitigation protocols that Plaintiff requested to be provided as her accommodation.

82.    ULA had actual knowledge of Plaintiff's religion, yet it discriminated against Plaintiff because ULA was motivated to avoid accommodations and vaccinate as many employees as possible.

83. ULA's motivation to vaccinate as many employees as possible is evidenced by its repeated, incessant demands to get vaccinated and ULA's desire "to meet the nation's needs and [its] launch manifest commitments."

84. ULA knew Plaintiff had sincerely held religious beliefs that compelled ULA to accommodate her; however, ULA was motivated by a desire to avoid accommodating Plaintiff and as a result, ULA placed Plaintiff on unpaid leave and terminated her employment.

85. ULA made Plaintiff's religion a factor in making its employment decisions because ULA knew of Plaintiff's sincerely held religious beliefs before it terminated her and nevertheless, disregarded her beliefs as they did not align with ULA's desire to vaccinate as many employees as possible.

86. Other similar corporations such as Space-X have not insisted on mandatory vaccination without allowing accommodations for objectors.

87. As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

//

//

<u>**COUNT IV**</u>
**Disability Discrimination**
**Violation of the FCRA**

88.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

89.    Plaintiff sincerely holds religious beliefs and is a member of a protected class based on her disability.

90.    Plaintiff is an employee within the meaning of the FCRA.

91.    Defendant is an employer within the meaning of the FCRA.

92.    The FCRA  Defendant from discriminating against Plaintiff in any manner that would deprive or tends to deprive Plaintiff of employment opportunities because of her disability.

93.    The FCRA forbids Defendant from discriminating against Plaintiff because of her disability.

94.    The FCRA requires Defendant to reasonably accommodate Plaintiff's disability absent proof that granting the accommodation would cause it undue hardship.

95.    Plaintiff is a disabled person as intended by the FCRA.

96.    Accommodating Plaintiff would not impose a hardship upon Defendant.

97.     Alternatively, and assuming *arguendo* accommodating Plaintiff would have imposed a hardship on Defendant, any such hardship that would have been imposed does not rise to the level of "undue".

98.     Defendant knew or should have known, or was otherwise reasonably notified of Plaintiff's disability.

99.     Plaintiff requested a reasonable accommodation.

100.    Defendant refused to provide Plaintiff a reasonable accommodation.

101.    Defendant took adverse employment action against Plaintiff, including without limitation, terminating Plaintiff because of her disability.

102.    Other similar employers have not insisted on mandatory vaccination without allowing accommodations for objectors.

103.    As a direct and proximate result of the aforesaid complained of conduct and violation of the FCRA, Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

**COUNT V**
**Religious Discrimination**
**Violation of the FCRA**

104.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

105.   Plaintiff sincerely holds religious beliefs and is a member of a protected class based on her religion.

106.   Plaintiff is an employee within the meaning of the FCRA.

107.   Defendant is an employer within the meaning of the FCRA.

108.   The FCRA   Defendant from discriminating against Plaintiff in any manner that would deprive or tends to deprive Plaintiff of employment opportunities because of her religion.

109.   The FCRA forbids Defendant from discriminating against Plaintiff because of her religion.

110.   The FCRA requires Defendant to reasonably accommodate Plaintiff's sincerely held religious beliefs absent proof that granting the accommodation would cause it undue hardship.

111.   Plaintiff's religious beliefs are sincerely held.

112.   Accommodating Plaintiff would not impose a hardship upon Defendant.

113.   Alternatively, and assuming *arguendo* accommodating Plaintiff would have imposed a hardship on Defendant, any such hardship that would have been imposed does not rise to the level of "undue".

114.   Defendant knew or should have known, or was otherwise reasonably notified of Plaintiff's sincerely held religious beliefs that prohibited compliance with Defendant's mandatory COVID-19 vaccination policy.

115.   Plaintiff requested a reasonable accommodation.

116.   Defendant refused to provide Plaintiff a reasonable accommodation.

117.   Defendant took adverse employment action against Plaintiff, including without limitation, terminating Plaintiff because of her sincerely held religious beliefs.

118.   Other similar employers have not insisted on mandatory vaccination without allowing accommodations for objectors.

119.   As a direct and proximate result of the aforesaid complained of conduct and violation of the FCRA, Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, requests this Honorable Court:

(a)   Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory

damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, and prejudgment interest thereon;

(b)    Grant Plaintiff her costs and an award of reasonable attorneys' fees (including expert fees); and

(c)    Award any other and further relief as this Court deems just and proper.

<u>**JURY DEMAND**</u>

Plaintiff hereby requests a trial by jury on all triable issues herein.

Dated: November 28, 2022

Respectfully submitted,

/s/ ANTHONY F. SABATINI
Anthony F. Sabatini [1018163]
SABATINI LAW FIRM, P.A.
411 N. Donnelly St, Ste 313
Mount Dora, FL 32757
(352) 455-2928
anthony@sabatinilegal.com

/s/ MICHAEL A. YODER
Michael A. Yoder* [VSB 93863]
LAW OFFICE OF MICHAEL A. YODER
2300 Wilson Blvd., Suite 700
Arlington, VA 22201
(571) 234-5594
michael@yoderesq.com
*pro hac vice forthcoming

*Counsel for Plaintiffs*